**BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTI-DISTRICT LITIGATION**

| | |
|---|---|
| **IN RE: BPS AND CABELA'S WIRETAPPING LITIGATION** . | MDL No. 3074 |

**REPLY IN SUPPORT OF MOTION OF PLAINTIFF ARLIE TUCKER FOR THE TRANSFER OF RELATED ACTIONS FOR COORDINATED OR <u>CONSOLIDATED PRETRIAL PROCEEDINGS PURSUANT TO 28 U.S.C. § 1407</u>**

## I. INTRODUCTION

Eight Related Actions in seven disparate jurisdictions[1] all allege BPS Direct, LLC ("BPS"), Cabela's Inc, and Cabela's Retail Mo, LLC (together, "Cabela's") (collectively, "Defendants") surreptitiously intercepted, disclosed and/or wiretapped the electronic communications of visitors to their websites, www.cabelas.com and www.basspro.com, in violation of state and federal privacy laws. Plaintiff Arlie Tucker filed a Motion to transfer all the Related Actions to the Western District of Missouri for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407 (ECF No. 1). Since that filing, four interested party responses have been submitted. Plaintiffs Brian Calvert and Heather Cornell, plaintiffs in the two actions in the Western District of Pennsylvania, support transfer to the Eastern District of Pennsylvania. ECF No. 12. Plaintiff Peter Montecalvo, Plaintiff in the action in the District of Massachusetts, also supports transfer to the Eastern District of Pennsylvania. ECF No. 15. Defendants filed an interested party response opposing transfer. ECF No. 17. And Plaintiff Timothy Durham, Plaintiff in the potential tag-along action *Durham v. Cabela's LLC*, Case No. 2:23-cv-01630-GW-KES (C.D. Cal.), supports transfer to the Eastern District of Pennsylvania.

Plaintiff Tucker continues to believe that the Western District of Missouri is an appropriate forum for transfer. However, given the arguments made by the other interested

---

[1] The Related Actions are pending in the District of Massachusetts, the Southern District of California, the Western District of Missouri, the Eastern District of Pennsylvania, and the Western District of Pennsylvania, and, since the filing of the Motion, the Central District of California (ECF No. 10). Cabela's also notes that an eighth action, *Hernandez v. BPS Direct, LLC d/b/a Bass Pro Shops*, Case No. 1:23-cv-413-LKG (D. Md.) was filed on February 15, 2023 in the District of Maryland.

party responses and that a plurality of the cases are currently located in the state of Pennsylvania, Plaintiff Tucker agrees that transfer to the United States District Court for the Eastern District of Pennsylvania before the Honorable Kelley Brisbon Hodge would best serve the convenience of the parties and witness and promote the just and efficient conduct of such actions.

## II.   ARGUMENT

Defendants argue that the seven actions should not be consolidated for 4 reasons; (1) informal coordination obviates the need for a centralized MDL proceeding; (2) the Related Actions present different questions of law and fact; (3) motions to dismiss are currently pending in three actions; and (4) consolidation would not be more convenient for the parties or witnesses. ECF No. 17 at 1. Then, in a footnote, Defendants argue that if centralization is to occur, it should be in their "home venue" of the Western District of Missouri. ECF No. 17 at 12 n.4. Plaintiff Tucker responds to these arguments in turn.

### A. Centralization is Necessary and Informal Coordination is Insufficient

Transfer of the Related Actions to a single forum under Section 1407 will prevent duplication of discovery and avoid overlapping or inconsistent determinations by courts in different jurisdictions. *See In re Domestic Airline Travel Antitrust Litig.*, 140 F. Supp. 3d 1344, 1345 (J.P.M.L. 2015) ("Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings, particularly with respect to class certification; and conserve the resources of the parties, their counsel and the judiciary."); *accord In re: Community Health Sys., Inc. Customer Sec. Data Breach Litig.*, MDL No. 2595, 84 F. Supp. 3d 1362, 1362-63 (J.P.M.L. Feb. 4, 2015); *In re NCAA Student- Athlete Concussion Injury Litig.*,

3

4872-7996-9623, v. 1

MDL No. 2492, 2013 WL 6825602, at *3 (J.P.M.L. Dec. 18, 2013); *In re Stryker Rejuvenate & ABG II Hip Implant Prods. Liab. Litig.*, MDL No. 2441, 949 F. Supp. 2d 1378 (J.P.M.L. 2013); *In re Parallel Networks, LLC*, 867 F. Supp. 2d 1352, 1353 (J.P.M.L. 2012); *In re Sony Corp. SXRD Rear Projection TV Mktg. Sales Practices & Prods. Liab. Litig.*, 655 F. Supp. 2d 1367 (J.P.M.L. 2009).

Defendants first argue that there are simply not enough actions to warrant centralization. ECF No. 17 at 6-8. Defendants are wrong. First, there are eight actions currently pending (nine if one includes two that were already consolidated in the Western District of Missouri), not four, and Defendants' conjecture on how some might resolve is not the current state of affairs. And these cases are pending in seven disparate jurisdictions, which distinguishes this situation from the cases cited by Defendants. *See, e.g.*, *In re GEICO Customer Data Sec. Breach Litig.*, 568 F. Supp. 3d 1406, 1407 (J.P.M.L. 2021) (declining to centralize five actions in three jurisdictions); *In re Hyundai & Kia GDI Engine Mktg., Sales Practices, & Prods. Liab. Litig.*, 412 F. Supp. 3d 1341, 1343 (J.P.M.L. 2019) (declining to consolidate cases where seven of ten actions were consolidated in one jurisdiction, two involved "notably different factual allegations," and majority of case had already settled); *In re Highway Accident in Buffalo Cty., Neb., on Aug. 22, 2000,* 305 F. Supp. 2d 1359, 1360 (J.P.M.L. 2004) (declining to consolidate four actions where three were in one district and a fourth in a second); *In re Scotch Whiskey*, 299 F. Supp. 543, 544 (J.P.M.L. 1969) (declining to consolidate two routine antitrust cases). The Panel routinely centralizes cases where multiple cases in many jurisdictions are involved. *See, e.g.*, *In re Erie COVID-19 Bus. Interruption Prot. Ins. Litig.*, 509 F. Supp. 3d 1370, 1371 (J.P.M.L.

4

2020) (centralizing 12 actions from 8 jurisdictions); *In re Allura Fiber Cement Siding Prod. Liab. Litig.*, 366 F. Supp. 3d 1365 (J.P.M.L. 2019) (centralizing seven actions from seven jurisdictions); *In re: Stanford Entities Sec. Litig.*, 655 F. Supp. 2d 1360 (J.P.M.L. 2009) (consolidating seven actions in four districts). Second, cases are still being filed – two cases have been filed since the pendency of Plaintiff Tucker's Motion, which supports centralization, especially since both were filed in additional jurisdictions, making coordination infeasible.

Defendants next argue that informal, voluntary coordination between the parties is sufficient and that centralization would therefore not minimize the risk of duplicative discovery. But this is simply not true here. First, as Defendants points out, the cases are at different stages, ranging from just filed to a pending motion to dismiss. This makes it less possible for coordination of deposition notices or coordinated pretrial efforts to be sufficient, since the cases will not reach discovery at the same time without coordination right now. *Cf. In re Sears, Roebuck & Co. Employment Practices Litig.*, 487 F. Supp. 1362, 1364 (J.P.M.L. 1980). Because the cases are currently at an early procedural phase and no motion to dismiss has yet been decided, now is the perfect time to transfer and consolidate the Related Actions. *In re: Bank of Am. Wage & Hour Emp. Pracs. Litig.,* 706 F. Supp. 2d 1369, 1371 (J.P.M.L. 2010).

The informal coordination that has thus far occurred supports a finding that centralization would aid the efficiency of the actions and the parties and witnesses and promote the just and efficient conduct of such actions. Plaintiff Tucker seeks to centralize actions related to two different defendants, which were filed separately because those

5

defendants use different websites to conduct the same alleged wiretapping activity. Defendants, in agreeing to consolidate actions against both defendants, concede that the activity alleged against both defendants relates to the same conduct, and thus is appropriately litigated together. Centralization would be particularly useful here *because* there are multiple actions against two different defendants where both defendants have argued that the cases should be consolidated because BPS and Cabela's are "common parties" and "related entities" such that all cases against the two sets of corporate entities ought to be litigated together. *See Tucker*, Case No. 6:22-cv-03285-SRB, ECF No. 17 at 1 (W.D. Mo. Jan. 17, 2023). The only difference is in the scope of whether these actions should be litigated in *seven different jurisdictions*, all on different schedules and some against one defendant and some against the other. When the litigation involves a situation like this one, where actions pending in a multitude of jurisdictions "allege similar, if not identical, claims and involve overlapping putative classes," "the number of parties and counsel, as well as the wide geographic distribution of the actions" supports a conclusion that "centralization is the most practicable means of coordinating the pretrial proceedings in this litigation." *In re Seresto Flea & Tick Collar Mktg., Sales Pracs. & Prod. Liab. Litig.*, No. MDL 3009, 2021 WL 3854901, at *2 (J.P.M.L. Aug. 11, 2021). Doing so in one jurisdiction would prevent duplication of discovery and avoid overlapping or inconsistent determinations by courts in different jurisdictions.

The sheer number of jurisdictions and class definitions is also evidence that centralization is necessary to avoid overlapping and inconsistent determinations by courts in different jurisdictions. Of the nine complaints currently on file, four allege a nationwide

class with state subclasses against either Cabela's or BPS (*Tucker*, alleging a nationwide class and Missouri state subclass in two now-consolidated complaints against both BPS and Cabela's; *Moore*, alleging a nationwide class and California state subclass against BPS; and *Durham*, alleging a nationwide class and California state subclass against Cabela's). The other five allege only state-based classes (*Cornell*, *Calvert*, and *Vonbergen*, all alleging Pennsylvania-based classes; *Montecalvo*, alleging a Massachusetts-based class; and *Hernandez*, alleging a Maryland-based class). The presence of multiple nationwide classes with some state based classes presents a unique situation in which overlapping and inconsistent determinations by courts in multiple jurisdictions is both possible and likely, which supports centralization. *In re Target Corp. Customer Data Sec. Breach Litig.*, MDL No. 2522, 2014 WL 1338473 (J.P.M.L. Apr. 2, 2014) (consolidating actions arising out of a data security breach on behalf of state and/or nationwide classes that asserted either a combination of state and/or federal claims). Inconsistent class certification rulings are also a concern that supports centralization. *See In re: Hair Relaxer Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. MDL 3060, 2023 WL 1811836, at *2 (J.P.M.L. Feb. 6, 2023); *In re ARC Airbag Inflators Prod. Liab. Litig.*, No. MDL 3051, 2022 WL 17843061, at *2 (J.P.M.L. Dec. 15, 2022); *In re Philips Recalled Cpap, Bi-Level Pap, & Mech. Ventilator Prod. Liab. Litig.*, 568 F. Supp. 3d 1408, 1410 (J.P.M.L. 2021) ("Most of the actions are putative consumer class actions asserting overlapping claims for violations of state consumer protection statutes, breach of warranties, and unjust enrichment. The asserted nationwide and state classes overlap significantly.").

4872-7996-9623, v. 1

**B.  The Related Actions Share Common Questions of Law and Fact.**

Defendants attempt to argue that because different state-based classes are pleaded, the common questions of law and fact are different enough to warrant denial of a request for centralization.  ECF No. 17 at 10-11. But the Related Actions involve common or virtually identical legal and factual questions, state variations in statutes notwithstanding. "Transfer under Section 1407 does not require a complete identity of common factual issues as a prerequisite to transfer, and the presence of additional facts or differing legal theories is not significant when the actions still arise from a common factual core." *In re Blue Cross Blue Shield Antitrust Litig.*, 908 F. Supp. 2d 1373, 1376 (J.P.M.L. 2012).   As the Panel recently noted, the "presence of additional or differing legal theories is not significant, however, when the actions arise from a common factual core." *In re Erie*, 509 F. Supp. 3d at 1373.

Here, all Related Actions arise from and largely focus on the same invasions of privacy, by the same defendants, through the same use of the Session Replay Technology. Namely, all complaints allege that BPS and Cabela engage in illegal and tortious practices of hiring third-party vendors to embed snippets of Session Replay Code on their websites, which then deploy on each website visitor's internet browser for the purpose of watching, intercepting, and recording the website visitor's electronic communications with the BPS and Cabela's websites, including their mouse movements, clicks, keystrokes (such as substantive information being entered into an information field or text box), URLs of web pages visited, and other electronic communications in real-time (the Website Communications). Session Replay Providers create and deploy the Session Replay Code

8

at BPS and Cabela's requests. That some state subclasses might have differing legal theories or justifications is not sufficient to undermine the value that coordination has in moving the litigation efficiently. *See In re Pharm. Indus. Average Wholesale Price Litig.*, 237 F. Supp. 2d 1377, 1379 (J.P.M.L. 2002) (to the extent non-common issues arise, transfer can have the "salutary effect of placing all actions in this docket before a single judge who can formulate a pretrial program that [] allows discovery with respect to any non-common issues to proceed concurrently with discovery on common issues").

Moreover, as discussed in detail above, all Related Actions plead a class action and there are overlapping state and national classes pleaded among the cases, which favors transfer for coordination or consolidation. *See In re Southeastern Milk Antitrust Litig.*, 530 F. Supp. 2d 1359 (J.P.M.L. 2008); *In re Am. Family Mut. Ins. Co. Overtime Pay Litig.*, 416 F. Supp. 2d 1346, 1347 (J.P.M.L. 2006); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 228 F. Supp. 2d 1379, 1381 (J.P.M.L. 2002); *see also In re Roadway Express, Inc. Emp't Practices Litig.*, 384 F. Supp. 612, 613 (J.P.M.L. 1974) ("[T]he existence of and the need to eliminate [the possibility of inconsistent class certification rulings] presents a highly persuasive reason favoring transfer under Section 1407.").

### C. The Progress of the Actions Supports Centralization and Coordination

Defendants then argue that three Related Actions have motions to dismiss pending (though only one is fully briefed) such that discovery may not be necessary. But this Court has noted that even when primarily legal questions may drive outcomes, centralization may serve to "create important efficiencies, avoid inconsistent rulings, and result in the in the overall fairer adjudication of the litigation for the benefit of all involved parties." *In re*

9

*Erie*, 509 F. Supp. 3d at 1373; *see also In re: Polar Bear Endangered Species Act Listing & 4(d) Rule Litig.*, 588 F. Supp. 2d 1376, 1377 (J.P.M.L. 2008) (centralizing four cases in two jurisdictions where other related actions were contemplated and likely even though "the amount of pretrial discovery may be less onerous than in other litigations and because common legal issues may predominate the unresolved matters" because centralization would benefit litigation overall under governing standard). The fact that Defendants cite "differing outcomes" in multiple jurisdictions *supports* centralization and transfer to one judicial district. *See* ECF No. 17 at 12.

### D. Centralization Would Aid Convenience for the Parties and Witnesses

Finally, Defendants argue that transfer and consolidation would not serve the convenience of witnesses or the parties because individual plaintiff discovery would proceed potentially far from plaintiff home venues, and because "this is not a case involving a significant number of fact witnesses or physical evidence, such that proximity should be a determinative factor." ECF No. 17 at 13. Defendants concede that many plaintiffs are in Pennsylvania and transfer to the Eastern District of Pennsylvania would aid the convenience of those witnesses and parties. ECF No. 17 at 13 n.4. Plaintiffs agree that proximity to Defendants' "home venue" would not aid the convenience of parties and witnesses. But centralization *would* aid the convenience of parties and witnesses by eliminating duplicative discovery, providing for one deposition of many witnesses instead of potentially many, and providing a streamlined forum for all fact discovery. And the Eastern District of Pennsylvania is a convenient forum, discussed more below. This supports centralization.

### E. The Eastern District of Pennsylvania is the Most Appropriate Transferee Forum

As noted before, Plaintiff Tucker continues to believe that the Western District of Missouri is an appropriate transferee forum and notes that the Panel has wide discretion to choose the transferee court. *See, e.g.*, *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 241 F.R.D. 435, 439 (S.D.N.Y. 2007); Alba Conte & Herbert Newberg, Newberg on Class Actions, §9:16 (4th ed.). However, based on the arguments made in the responsive briefs and additional cases filed, it appears clear that the Eastern District of Pennsylvania best meets the standards used by the Panel to determine the most appropriate forum, and Plaintiff Tucker thus respectfully requests transfer there.

#### 1. The Majority of the Related Actions are in Pennsylvania

The Panel has expressed a preference for transfer to a forum in which the greatest number of cases are pending. *See In re Stryker Rejuvenate, ABG II Hip Implant Prods. Liab. Litig.*, 949 F. Supp. 2d at 1380 (district where plurality of cases pending was appropriate transferee court); *In re Air Crash Near Athens, Greece on Aug. 14, 2005*, 435 F. Supp. 2d 1340, 1342 (J.P.M.L. 2006) (transferring actions to the Northern District of Illinois where the majority of related actions had been filed*); In re OxyContin Antitrust Litig.*, 314 F. Supp. 2d 1388, 1398 n.1 (J.P.M.L. 2004) (transferring actions to the Southern District of New York where twenty-three out of forty-one actions were already pending in that district). Here, three cases are pending in Pennsylvania, including the first-filed case, which is the most of any state, which favors transfer to the Eastern District of Pennsylvania. This especially makes sense here, where other than three actions in Pennsylvania, all other

jurisdictions are down to one action and the Related Actions are geographically disbursed. *See In re Sierra Wireless, Inc., Sec. Litig.*, 387 F. Supp. 2d 1363, 1364 (J.P.M.L. 2005) (transferring cases to the forum in part because that was where the first-filed action and a majority of pending actions were located).

### 2. The Efficiency of the Court's Civil Docket.

The efficiency of the district's civil docket is also important in determining the appropriate forum for adjudication of multidistrict litigation, and here favors the Eastern District of Pennsylvania. *In re: DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prods. Liab. Litig.*, 787 F. Supp. 2d 1358, 1360 (J.P.M.L. 2011). While the Western District of Missouri has 487 pending cases and 473 weighted filings per judgeship,[2] the Eastern District of Pennsylvania has 295 actions per judgeship. And the Eastern District of Pennsylvania also has a shorter median time of resolution of 6.7 months as opposed to the Western District of Missouri's median time of 7.3 months.[3] As a result, this factor supports transfer to the Eastern District of Pennsylvania.

### 3. The Eastern District of Pennsylvania Is Geographically Convenient to The Parties and Witnesses in The Related Actions.

Despite arguing that the Western District of Missouri is their "home venue," Defendants make no argument in favor of transfer there and in fact disclaim that any discovery of Defendants need take place there. As noted, Defendant, Cabela's Inc. has its

---

[2] *See* U.S. District Courts- Combined Civil and Criminal Federal Management Statistics (June 30, 2022), *available at* https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0630.2022_0.pdf.
[3] *Id.*

12

principal place of business in the state of Nebraska, and several of the plaintiffs in the Related Actions are located in Pennsylvania, making the Eastern District a convenient forum.  In addition, the Eastern District of Pennsylvania is readily accessible for multidistrict litigation and would be a convenient forum for many parties. For parties who are not within driving distance (which potentially includes Massachusetts and Maryland plaintiffs and counsel), the Philadelphia International Airport is "a large hub airport serving 25.24 million passengers" in 2022.[4] "Twenty-seven airlines, including all major domestic carriers, offer nearly 323 daily departures,"[5] including multiple daily flights to major hub cities and others, including Chicago, New York, Pittsburgh, Los Angeles, San Diego, Minneapolis, and Boston[6] — all cities where counsel for the parties are located. In addition, located in Philadelphia, a major metropolitan area, the Eastern District of Pennsylvania has numerous hotel accommodations located in close proximity to the courthouse.  This ease of access supports transfer to the Eastern District of Pennsylvania. *Accord In re AirCrash Near Van Cleve, Miss., On August 13, 1977*, 486 F. Supp. 926,928 (J.P.M.L. 1980); *In re A.H. Robins Co., Inc. "Dalkon Shield" IUD Prods. Liab. Litig.*, 406 F. Supp. 540, 543 (J.P.M.L. 1981).

---

[4] *About Us,* Philadelphia Int'l Airport, https://www.phl.org/about/about-us (last visited Mar. 8, 2023).
[5] *Id.*
[6] *All scheduled direct (non-stop) flights from Philadelphia (PHL),* FlightsFrom, https://www.flightsfrom.com/PHL (last visited Mar. 8, 2023).

4872-7996-9623, v. 1

## III. CONCLUSION

Plaintiff Tucker respectfully requests that the Court grant the Motion to Transfer Related Actions for Coordinated or Consolidated Pretrial Proceedings Pursuant to 28 U.S.C. § 1407 and transfer all Related Actions and future tag-along actions to the Eastern District of Pennsylvania, or, in the alternative, to the Western District of Missouri.

Dated March 15, 2023

Respectfully submitted,

*s/ Kate M. Baxter-Kauf*
Kate M. Baxter-Kauf (MN #0392037)
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
kmbaxter-kauf@locklaw.com
*Attorney for Plaintiff Tucker*

4872-7996-9623, v. 1